IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LARRY D. BROWN, *et al.*       :
                                                                     :
    v.                                            :     Civil No. CCB-12-1817
                                                                    :
FERGUSON ENTERPRISES, INC.    :

## MEMORANDUM

The plaintiffs, former employees of defendant Ferguson Enterprises, Inc. ("FEI"), have brought claims alleging discriminatory treatment and termination under the Age Discrimination in Employment Act and a supplemental state law defamation claim. The defendants have filed a motion to dismiss the plaintiffs' defamation claim. For the reasons set forth below, the motion will be granted.

## BACKGROUND

According to the complaint, beginning as early as 1994, Lyon Conklin & Co., Inc. (which became a subsidiary of FEI in 1995), began a "corrupt claim-back process" of fraudulently deflating its reported sales prices to its supplier, Trane, Inc., in order to continue receiving discounts from Trane. (Compl., ECF No. 1, ¶¶ 10-17.) The process "became such standard operating procedure over the years that the practice spread to multiple levels of the Ferguson organizational structure and was expanded to include vendors/supplies other than just Trane." (*Id.* ¶ 17.) This process accounted for millions of dollars in fraudulently obtained profits. (*Id.* ¶ 18.)

Plaintiff David Brown was trained by "senior management" of Lyon Conklin about the claim-back process when he began working for the division in 1998. (*Id.* ¶ 19.) The process

continued under several managers. (*Id.* ¶¶ 20-23.) Brown became general manager of Lyon Conklin in 2008 and plaintiffs Dave Mahoney, John Hussey, and Jonathan Gobble reported to Brown as his Sales Manager, Operations Manager, and Marketing Manager, respectively. (*Id.* ¶ 22.) Together with four other general managers, three other sales managers, and six other operating managers, the plaintiffs perpetuated the claim-back process throughout FEI. (*Id.*) Lyon Conklin, under the leadership of Brown and his team consisting of the other plaintiffs, won FEI's prestigious "Supply House of the Year" award three of the five years Brown served as General Manager. (*Id.*) Brown's superiors continued to encourage and approve the fraud, even through a 2009 audit Trane conducted when it suspected foul play. (*Id.* ¶ 23-27.) The plaintiffs participated in forging documentation to "pass" Trane's audit. (*Id.*)

Trane eventually discovered the fraud and, according to the plaintiffs, was paid over $40 million to "settle" the matter and keep it a secret from other suppliers. (*Id.* ¶ 28.) On January 16, 2012, all four plaintiffs were terminated "for cause" because of their participation in the effort to "pass" Trane's 2009 audit. (*Id.* ¶ 30.) None of the other managers or officers across FEI who participated in the fraud were fired. (*Id.*)

Since their termination, the plaintiffs allege that FEI has made statements to third-parties "to the effect that the [p]laintiffs alone had engaged in fraudulent conduct without the knowledge, authorization, participation[,] or ratification of anyone within [FEI]." (*Id.* ¶ 31.) The plaintiffs have also attached an amended complaint to their opposition to FEI's motion to dismiss in which they elaborate that they believe FEI made such statements to potential employers because they have been confronted with statements "implying that someone from [FEI] had communicated to potential employers that [the p]laintiffs had engaged in the claim back scheme on their own and without [FEI's] knowledge or approval." (Am. Compl., ECF No. 15-2, ¶ 32.)

The plaintiffs state that "[i]t is highly unlikely that any potential employer would be aware of the issue unless senior executives at FEI had communicated the . . . false accusations to them[.]" (*Id.*) In their amended complaint, the plaintiffs additionally allege that FEI gave "false reasons" to their former co-workers for their termination. (*Id.* at 31.) Specifically, the plaintiffs claim that certain former co-workers were told they were fired for "'cooking the books,' 'cheating,' and 'embezzling,' despite the fact that [they] never converted to themselves any of the funds improperly collected by [FEI] as a result of the scheme" and that they "only engaged in the scheme to benefit [FEI]." (*Id.*)

## ANALYSIS

"'[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a 12(b)(6) motion, the court assumes the facts alleged in the complaint are true and draws all reasonable factual inferences in the nonmoving party's favor. *Edwards*, 178 F.3d at 244. A complaint need not provide "detailed factual allegations," but it must "provide the grounds of [the plaintiff's] entitlement to relief" with "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal quotations omitted).

FEI has moved to dismiss the plaintiffs' defamation claim under Rule 12(b)(6). "In order to plead properly a defamation claim under Maryland law, a plaintiff must allege specific facts

3

establishing four elements . . . (1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012) (citations and quotations omitted). A "false" statement is "one that is not substantially correct." *Piscatelli*, 35 A.2d at 1147 (quotation omitted). "If the 'gist' or 'sting' of a statement is substantially true, 'minor inaccuracies will not give rise to a defamation claim.'" *AIDS Counseling and Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) (quoting *Liberty Lobby, Inc. v. Rees*, 852 F.2d 595, 601 (D.C. Cir. 1988)). Maryland extends substantial constitutional protections to private defamation defendants and "the burden of proving falsity rests upon the plaintiff." *Jacron Sales Co., Inc. v. Sindorf*, 350 A.2d 688, 694-698 (Md. 1976).

The plaintiffs present a novel theory of defamation in their claim. They do not dispute that they were involved in a decades long scheme to defraud FEI's customers, nor do they contest their active and voluntary participation in the scheme. Rather, the plaintiffs assert that statements made by FEI to third-parties were defamatory because, in addition to containing the true reason they were fired (defrauding customers), FEI's statements also falsely communicated that the plaintiffs acted "alone[,]" without FEI's "authorization," "knowledge" or "approval[,]" and for their own benefit rather than FEI's. (Compl. ¶ 31; Am. Compl. ¶¶ 31-32.)

The plaintiffs' claim fails for two reasons. First, the plaintiffs' allegations do not appear to reach the required pleading specificity as to statements FEI purportedly made to potential employers. *See Skillstorm, Inc. v. Electronic Data Systems, LLC*, 666 F. Supp. 2d 610, 619-20 (E.D. Va. 2009). In the proposed amended complaint, the plaintiffs vaguely assert that they have been "confronted with statements implying that someone from [FEI] had communicated to

4

potential employers that [they] had engaged in the claim back scheme on their own and without [FEI's] knowledge or approval[,]" but the plaintiffs apparently believe FEI made such statements to potential employers only because "[i]t is highly unlikely that any potential employer would be aware of the issue unless senior executives at FEI had communicated the same false accusations to them as have been communicated to [the p]laintiffs' former co-workers." (Am. Compl. ¶ 32.) These accusations of defamation contain no specific description of the content of the alleged statements, nor when and how they were communicated. Because of the substantial factual and constitutional burden defamation plaintiffs must meet to prove liability, these allegations cannot plausibly support an actionable defamation claim against FEI.

     Second, even if FEI did intentionally communicate to third-parties that the plaintiffs acted alone or without authorization, the truth would have had the same negative effect on third-parties' perceptions of the plaintiffs. To prove defamation, the plaintiffs must show why FEI's allegedly false statements were *additionally* damaging beyond the damage that would have been caused had FEI truthfully reported the circumstances leading to the plaintiffs' termination. *See Batson v. Shiflett*, 602 A.2d 1191, 1212 (Md. 1992) ("[A] statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." (quotation omitted)) (citing *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-17 (1991)); *AIDS Counseling*, 903 F.2d at 1004 ("[T]hese statements, although false, did not cause the story to produce a different effect on the audience than would have been produced had the truth of the matter been spoken."). Whether they acted alone or not, the plaintiffs were willing to defraud customers at the direction of a senior manager. So, it is not plausible that, merely because FEI may have stated that the plaintiffs acted alone, potential employers formed a significantly more negative view of them than if such employers were told

5

the undisputed truth. Nor is it plausible, as the plaintiffs claim, that they acted solely for the benefit of FEI. As they admit in the complaint, the plaintiffs were rewarded with substantial salaries, promotions, and "prestigious" FEI awards for their performance. It is unlikely potential employers would have viewed them as blameless victims of FEI's senior management even if FEI faithfully relayed the plaintiffs' own version of events. It is impossible to sustain a defamation claim under Maryland law on the "substantially correct" statements alleged in either complaint.

In their proposed amended complaint, the plaintiffs further plead that FEI gave "false" reasons about their termination to several of their former co-workers, but these additional allegations do not save their claim. First, the alleged statements fail for the same reasons the alleged statements to the plaintiffs' potential employers fail. At most, such statements (that the plaintiffs were "cooking the books," "cheating," and "embezzling" (Am. Compl. ¶ 31)), are substantially correct statements that the plaintiffs were fired for fraudulent, dishonest conduct. Second, such statements are likely subject to a conditional privilege under Maryland law and thus could not serve as a basis for liability. *See Gohari v. Darvish*, 767 A.2d 321, 328 (Md. 2001) ("Communications arising out of the employer-employee relationship clearly enjoy a qualified privilege[.]" (quotation omitted)); *Happy 40, Inc. v. Miller*, 491 A.2d 1210, 1214-16 (Md. App. 1985) (statements made to co-workers regarding a plaintiff's termination generally fall within this privilege). In short, neither the plaintiffs' original nor amended complaints support an actionable defamation claim. Accordingly, the plaintiffs' claim will be dismissed with prejudice.

## **CONCLUSION**

For the above reasons, the defendant's motion to dismiss will be granted. A separate order follows.

December 11, 2012                                       /s/
       Date                                       Catherine C. Blake
                                            United States District Judge